## JOSEPH T. BECKET *vs.* BENEDICT T. CLARK.

Distributors of an estate divided a homestead by a line running east and west through it and through the hall of the house, and gave the one part to one of the heirs, with "the north half of the house," and the other part to another heir, with "the south half of the house." The line which divided the land did not divide the house into two equal parts, but a line drawn through the middle of the front door and thence at right angles through the house was twenty-six inches north of that line. Held that the house was divided by the same line that divided the land.

TRESPASS *qu. cl. fr.*, brought to the City Court of the city of Meriden, and tried on the general issue, with notice of claim of title, closed to the court, before *Chamberlain, J.* Judgment for the defendant and motion to the Superior Court in New Haven County for a new trial, which motion was reserved for the advice of this court. The case is sufficiently stated in the opinion.

*G. A. Fay*, in support of the motion.

*O. H. Platt*, contra.

FOSTER, J.   Two questions are involved in this case; one of evidence, the other of title.

We are inclined to think that the evidence which was rejected should have been received, but if the case goes back on that ground only, it will very probably come again before us on the question of title.   That is a controlling question; and as it is legitimately presented on the record, we proceed at once to examine and determine it, and so waive, as unnecessary, the consideration of the other points made in the case.

The premises on which this controversy has arisen formed a part of the dower lands in the estate of the deceased, Jared Benham, of Meriden.   On the death of his widow, two several third parts of those dower lands were set out and distributed; the one to Nancy Clark, the other to Betsey Booth, children and heirs at law of said Benham.   The plaintiff now owns the portion set to Betsey Booth, the defendant that set to Nancy Clark.   The "home lot," with the dwelling house on the same, constituted the premises to be divided, and the question of title is settled by ascertaining where the distributors actually ran the line which separated this lot, and the house upon it, into two separate parts or portions.

There is not, and cannot possibly be, any dispute as to the line which divides the lot of land, for that is defined and determined with all possible mathematical certainty.   In making the division, the distributors commenced at the southeasterly corner of the "home lot," which lies on the westerly side of the Hartford and New Haven turnpike road, then ran north 40° east, by said road, four rods; then westerly, parallel with the southerly line of said lot, five rods; then north 43° east, one rod; then westerly, parallel with the southerly line of said lot, to Twiss's land, which bounded it on the west, the Merriam land bounding it on the south, and the said turnpike road on the east.   Thus the south portion of the "home lot" was made up, and set off to Nancy Clark. The remaining portion constituted the north part of the lot, and was set to Betsey Booth; the line just described being their dividing line, making the northerly line of Nancy Clark,

and the southerly line of Betsey Booth. This line, which is the only one now important to be considered, constitutes the southerly line of the present plaintiff and the northerly line of the present defendant.

If this were all there was in the case, there could clearly be no controversy between these parties as to title and ownership, but there was and is a dwelling house on this lot, which stands across this line, and is cut by it into two parts or portions.

The plaintiff claims that all that portion of the house which is situated north of this line belongs to him, and all that portion which is south of it belongs to the defendant; in other words, that the line which divides the land is the line which divides the house.

The defendant claims that the house is divided by a line which runs east and west through the centre of the front door of the house, which line is two feet two inches northerly of the line which divides the land. No allusion is made to this line by the distributors, unless by implication. They set to Nancy Clark " one piece of land" [the one above described,] and " the south half of the dwelling house" to Betsey Booth, " one piece of land," [it being the residue, the north half of the " home lot,"] and "the north half of the dwelling house."

The plaintiff claims that the proper construction of this language gave to the owner of each portion of the " home lot," such part and portion of the house as stood on the respective portions of the " home lot" as thus divided.

The defendant claims that " the south half of the dwelling house" means that portion of the house lying south of the line running westerly through the center of the front door, and "the north half of the dwelling house" that portion lying north of the same line. That line is equidistant from the northeast and from the southeast corner of the house, seventeen and a half feet from each corner. On the southwest corner of the house is an ell, fourteen by twelve feet, one story high, which stands wholly on land of the defendant.

The language employed in the distribution may not be wholly free from doubt, but the construction claimed by the

plaintiff is sustained, we think, by strongly preponderating reasons. That construction, it is true, does not divide the house equally, giving one half to each; neither does the other construction accomplish that object, if indeed it comes as near to accomplishing it, which is very doubtful. That construction, it is true, gives the whole of the front door to the owner of the north half of the house, there being no other door in that part, while there is another door in the south part. Giving the owners of each division access alike to the front door, deprives the owner of the north division of the right to close the only door of his house, by day or night; a greater evil, we think, than restricting the owner of the south division to the use of the other, and that a rear door, of his house.

Had there been no mention made of the house by the distributors in dividing this "home lot," it cannot be doubted but that each party would have taken that portion of it which stood on her land. *Cujus est solum, ejus est usque ad cœlum.* We do not regard the expressions used, " south half of the dwelling house," and " north half of the dwelling house," as varying this maxim, as old, probably, as ownership in land. The terms "south half" and "north half" are not, as we suppose, intended to be used with mathematical accuracy— the subject matter forbade it—but simply as descriptive of those parts of the house which stood respectively on the north and on the south of the east and west line which divided the lot.

Assuming, as we must assume if we allow the claim of the defendant, that there is one line which divides the land and another which divides the house, and taking the line which divides the house as defined by the defendant, several questions arise, not all of which are perfectly easy of solution. What is the character of the title of the strip of land, twenty-six inches wide, covered by the house, lying north of the line which divides the lot? Was Betsey Booth divested of the fee in this land by this division of the house, having been vested with it in the division of the lot? If not divested of the fee, might she maintain ejectment to recover possession?

Might Nancy Clark, in equity, enjoin Betsey Booth against prosecuting such an action at law ?   Will this easement or servitude imposed on the Betsey Booth land terminate with the house, or will it continue after that is destroyed ?

Certain things were done by the parties, soon after the distribution, which may be considered as giving contemporary construction to that distribution.

The plaintiff built a partition through a part of the lower story of the house, extending from the rear of the house to the chimney. · This partition was coincident with the division line of the land.   Nancy Clark, soon after the distribution, built steps in the south half of the front hall-way, to the line running through the middle of the front door.   Those steps led to the chamber over the south front room, and were used and occupied by her up to the time of her death.   Long since the distribution the plaintiff fastened up the north half of the front door, and built a partition through the front hall on a line with the middle of the door.   Nancy Clark, during her life, passed in and out of the south half of the front door, to and from the portion of the house occupied by her.   The plaintiff sometimes interrupted this use of the door—locked it upon her, and forbade her use of it; and she thereupon desisted from such use till further permission was granted her.   Since 1860 the plaintiff has shingled the north part of the house ; on the front roof he shingled as far south as the middle of the front door ; on the back roof, he shingled as far south as the dividing line of the land.

These acts of the parties, though far enough from being conclusive, and to some extent even being equivocal in their character, tend, we think, to show that the parties considered the house to be divided by the same line that divided the land.

If the distributors had intended to divide the house by a different line from that by which they divided the land, it was manifestly most easy and most natural to say so.   If running the line dividing the land the additional distance to the north, to coincide with the line claimed by the defendant as the dividing line of the house, would give an undue share

of land south of the line, there would be force in the defend-ant's claim.   The record shows that precisely the reverse was the fact.   The line so run would not have given enough land south of the line.   This is proved by the fact that the present line dividing the land runs from a point on the turnpike road only four rods northerly from the southeast corner of the "home lot," it then runs westerly, parallel with the south line of the lot, five rods ; that reaches to a point a little west of the house ; it then runs one rod further towards the north, and taking that additional width out of the north portion of the lot, runs westerly, still parallel with the south line of the lot, to its western boundary.

Now if the distributors intended to divide the house by a line twenty-six inches northerly of the line by which they divided the lot, what possible reason can be given why they did not run the line dividing the lot twenty-six inches further north, on the east side of the house ?   A short dis-tance beyond the west side of the house, the line runs, almost at right angles, one rod northerly, as we have seen. Of course this was to make the lots equal; but the line from the south-east corner of the lot by the road, which now runs four rods by the road, could readily have been produced twenty-six inches, so that in running west it would have gone through the center of the front door, and so coincided with the line claimed as the dividing line of the house.   The line then need not have been run so far north, on the west side of the house.   Nancy Clark, and those claiming under her, would thus have been enabled to enter the front door of the house without leaving their own land, or encroaching at all upon the rights of others.   If therefore the distributors in-tended to divide the house through the center of the front door, as claimed by the defendant, we discover no reason why the line dividing the lot should not have been run through the house on the same line.   Many cogent reasons can be given why it should have been so run.   We reach the con-clusion that they did not so run it because they did not intend to divide the house on that line.   It would be unequal, giving to the owner of the south half the whole of the ell, over and

above one full half. That may account for running the line south of the center of the front door, and then running farther north, after passing to the west of the house, in order to get a proper amount of land for the south portion of the "home lot."

We think the court below erred in the construction given to this distribution. It seems to us more natural and more reasonable to say that they divided the land and the house upon it by one and the same line.

A new trial is advised.

In this opinion the other judges concurred.